# ORIGINAL

FILED IN CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAN 0 9 2007

JAMES N. HATTEN, CLERK

By: _____ Deputy Clerk

| | |
|---|---|
| DAISY ABDUR-RAHMAN and RYAN PETTY, | x |
| Plaintiffs, | : |
| vs. | : CIVIL ACTION |
| | FILE NO. |
| JOHN WALKER and CHESTER GUDEWICZ, JR., | : 1:07-CV-0048 |
| Defendants. | : |
| | x |

## COMPLAINT

Plaintiffs, Daisy Abdur-Rahman and Ryan Petty, by and through their counsel of record, Robert N. Marx of Marx & Marx, L.L.C. as and for their Complaint respectfully allege as follows:

## PARTIES

### 1.

Plaintiff, Daisy Abdur-Rahman (hereinafter "Ms. Abdur-Rahman") is a natural person residing within the Northern District of Georgia.

### 2.

Plaintiff, Ryan Petty (hereinafter "Mr. Petty") is a natural person residing within the Northern District of Georgia.

1

3.

On information and belief, Defendant John Walker (hereinafter "Mr. Walker") is a natural person residing within the Northern District of Georgia.

4.

At all relevant times Mr. Walker was employed in the position of Compliance Manager within the DeKalb County Department of Public Works, Water & Sewer Division.  Mr. Walker is being sued herein in his individual capacity.

5.

On information and belief, Defendant Chester Gudewicz, Jr. (hereinafter "Mr. Gudewicz") is a natural person residing within the Northern District of Georgia.

6.

At all relevant times Mr. Gudewicz was employed in the position of Compliance Supervisor within the DeKalb County Department of Public Works, Water & Sewer Division.  Mr. Gudewicz is being sued herein in his individual capacity.

## JURISDICTION

7.

The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §1983 and the First Amendment to the United States Constitution..

VENUE

8.

Venue is appropriate pursuant to 28 U.S.C. § 1391 in that the Northern District of Georgia is the judicial district in which the events giving rise to this claim occurred.

NATURE OF THIS ACTION

9.

This is a complaint of unlawful retaliation in violation of Plaintiffs' First Amendment rights and in violation of 42 U.S.C. §1983.  The complaint seeks declaratory and permanent injunctive relief and damages for redress of rights secured to Plaintiffs by 42 U.S.C. §1983.  Plaintiffs also seek an award of attorneys' fees and costs, pursuant to 42 U.S.C. §1988.

FACTS

10.

Plaintiff Daisy Abdur-Rahman was employed as a Compliance Inspector by the DeKalb County Department of Public Works, Water & Sewer Division (hereinafter "DeKalb County Water & Sewer Division"), from on or about August 30, 2004 to on or about March 11, 2005.

11.

Plaintiff Ryan Petty was employed as a Compliance Inspector by the DeKalb County Water & Sewer Division from on or about September 7, 2004 to on or about March 11, 2005.

12.

At all relevant times Defendant Gudewicz was Ms. Abdur-Rahman's and Mr. Petty's immediate supervisor.

13.

At all relevant times Defendant Walker was Mr. Gudewicz's immediate supervisor.

14.

At the times that they were hired, Plaintiffs were told that their job duties would include writing DeKalb County's fat, oil and grease ("FOG") ordinances.

15.

After they had been hired by DeKalb County Water & Sewer Division, Plaintiffs Abdur-Rahman, and Petty were selected to serve on the Codes and Ordinances Task Force. On information and belief, the Codes and Ordinances Task Force was established to update applicable DeKalb County codes and ordinances, specifically to write fat, oil and grease ("FOG") codes and to devise a permitting system. Plaintiffs' job duties in this regard required them to research the existing sanitary sewer overflow ("SSO") problem in

4

DeKalb County, and to generate FOG codes accordingly.

16.

At the outset, Plaintiffs were stonewalled by DeKalb County Water & Sewer Division management in their efforts to obtain the necessary SSO data that would support any changes they might make regarding the FOG codes. In particular, Plaintiffs sought the data regarding the number of yearly SSO's in Dekalb County, and sought to ascertain whether and how SSO's were being reported by DeKalb County to the Georgia State Environmental Protection Division. On one occasion, Mr. Petty and another Compliance Inspector met with the DeKalb County supervisor who dealt with SSO's in DeKalb County, but they were denied access to the required information, which they never received.

17.

When Ms. Abdur-Rahman, and Mr. Petty complained to Mr. Walker and Mr. Gudewicz about the *de facto* refusal of DeKalb County Water & Sewer Division's management to provide them with the necessary SSO data in order to redraft the county's FOG ordinances, Mr. Walker and Mr. Gudewicz responded that they were being "too scientific" and "too thorough."

18.

Thereafter, Plaintiffs, along with other Compliance Inspectors, commenced doing field inspections of SSO's. Plaintiffs' respective territories were interlocking areas

entirely within the southern portion of DeKalb County south of Ponce De Leon Avenue. During this time, Plaintiffs began to raise concerns about protocols and standards for SSO's in their areas, and regarding DeKalb County's reporting of SSO's to the Georgia EPD.

19.

In or about the end of November 2004, Mr. Walker and Mr. Gudewicz told Plaintiffs that they were "ruffling too many feathers", that they "shouldn't rock the boat", and that they needed to learn how to do it "DeKalb's way."

20.

In or about the beginning of 2005, Plaintiffs' job duties were expanded to include investigating SSO's in order to determine whether grease was the cause of the SSO's. On information and belief, when an SSO occurred in DeKalb County and reached a state waterway, the County was required to report that SSO within 24 hours to the Georgia EPD, including providing such information as the location of the SSO, the number of gallons involved in the spill, whether there was fish kill, whether the site was posted, and the affected state waterway. On information and belief, thereafter, DeKalb County was required to follow that initial 24 hour notification up with a "five day letter" to the Georgia EPD giving further specifics about the SSO including information regarding its cause. On information and belief, Plaintiffs and the other Compliance Inspectors who reported to Mr. Gudewicz investigated the cause of the SSO's as part of a "post mortem"

6

process which provided information that DeKalb County thereafter would include in its

"five day letter" to the Georgia EPD.  On information and belief, the SSO's that were to

be investigated by Mr. Gudewicz's group had already been determined to be reportable to

the Georgia EPD.

21.

During the course of their employment, Plaintiffs articulated concerns that SSO's

were not being properly reported to the Georgia State Environmental Protection Division

("EPD") or were not reported at all.  Plaintiffs also raised concerns 1) regarding the

failure to properly post SSO sites, 2) about testing and the determination of fish kill at

SSO sites for reporting purposes to the EPD, and 3) regarding the calculation of spill

gallonage at SSO sites also for purposes of proper reporting to the EPD.

22.

On information and belief, the law requires that DeKalb County adhere to specific

posting requirements at SSO sites for the purpose of public safety and accurately report to

the EPD whether SSOs are posted.  On information and belief, the law also requires that

DeKalb County determine and accurately report to the Georgia EPD regarding the

number of gallons involved in a spill and as to whether or not an SSO involves fish kill.

On information and belief, both the determination of fish kill and the number of gallons

involved in an SSO spill relate to whether the spill is a major or minor spill.

23.

In February 2005, Mr. Abdur-Rahman raised the issue with Mr. Gudewicz as to whether the SSO at 1755 Fairlake Drive, Decatur Georgia had been reported and whetther a sign had been posted. Ms. Abdur-Rahman initially voiced her concern about whether this SSO had been reported when she spoke to Mr. Gudewicz regarding a handwritten note that she found on her desk which contained the 1755 Fairlake Drive address. Mr. Gudewicz told Ms. Abdur-Rahman to investigate that SSO, whereupon Ms. Abdur-Rahman raised the issue of whether it had been reported to the EPD since at all other times she had received specifics regarding the SSO's she was to investigate from the fax form that Dekalb County had sent to the Georgia EPD conveying the required 24 hour notice. Both before and after Ms. Abdur-Rahman physically investigated the SSO at 1755 Fairlake Drive she discussed her concern about whether it had been reported to the EPD with Mr. Gudewicz who was increasingly put off by her repeatedly raising this issue. On this occasion and on other occasions, Ms. Abdur-Rahman complained that failing to post SSO sites violated the law. Mr. Gudewicz tried to pressure Ms. Abdur-Rahman to blame the 1755 Fairlake Drive SSO on several upstream generators (restaurants) which Ms. Abdur-Rahman resisted because her own inspection of that SSO revealed that these restaurants clearly were not at fault, and rather, the fault lay with DeKalb County. Mr. Gudewicz was visibly upset at Ms. Abdur-Rahman's refusal to blame the SSO on restaurants that were in compliance, and her encouragement that

DeKalb County, which was to blame, be held responsible.

24.

Plaintiffs repeatedly questioned the methodology by which spill gallonage was determined for reporting purposes, and raised the issue that SSO's were not properly being reported to the Georgia EPD as to this issue. Plaintiffs also complained that false information was being reported to the Georgia EPD, such as the routine reporting of "no fish kill", when no sampling, required in order to report that finding, had been conducted.

25.

On information and belief, Mr. Gudewicz and Mr. Walker stonewalled Plaintiffs' efforts to obtain SSO reporting information to the Georgia EPD because DeKalb County's records were incomplete and inaccurate, and reflected that SSO's had been improperly reported to the EPD. On information and belief, Mr. Gudewicz and Mr. Walker considered the Plaintiffs to be "ruffling feathers" when they raised concerns about posting and remediation of SSO sites, and regarding proper reporting of SSO's, since DeKalb County had in fact failed to properly report SSO's to the Georgia EPD.

26.

On November 20, 2006 DeKalb County and the Georgia EPD entered into a Consent Order, No. EPD-WQ-4628 regarding spills that had occurred in DeKalb County through March 2006, including spills that occurred during the time of Plaintiffs' employment (hereinafter "Consent Order"). The Consent Order directed DeKalb County

to pay a fine of $265,875.00.  The Consent Order recites that the Georgia EPD had conducted a comprehensive spill investigation and had found "several significant items of concern regarding [DeKalb] County's spill reporting procedures and failure to comply with the Rules, including failure to properly report spills, provide sufficient remediation of spill sites, correctly characterize the severity of spills, post spill notifications and take actions to prevent further recurrence as required by the Rules."

27.

At all times during their respective periods of employment, Plaintiffs performed their jobs in a satisfactory manner, and were never informed of any alleged deficiencies in their performance.

28.

On or about January 26, 2005, Defendant Gudewicz, as Plaintiffs' immediate supervisor, recommended that Plaintiffs be discharged for alleged unsatisfactory work performance.

29.

On information and belief, when making the aforesaid recommendation, Defendant Gudewicz ostensibly relied upon "documentation" that did not exist at the time of such recommendation, and that was not even prepared until after his aforesaid recommendation had been made.

30.

On information and belief, at the time that Defendant Gudewicz made his aforesaid recommendation, there was no written documentation confirming any alleged unsatisfactory work performance by either Plaintiff. On information and belief, in the event of unsatisfactory work performance written documentation substantiating alleged performance deficiencies should have been generated and maintained, and it was DeKalb County's practice to inform employees of alleged performance problems so that they could improve during their working test period.

31.

On information and belief, on or about February 8, 2005, Defendant John Walker approved Defendant Gudewicz's recommendations to terminate the employment of Plaintiffs Daisy Abdur-Rahman and Ryan Petty.

32.

On information and belief, Defendant Gudewicz recommended terminating the Plaintiffs' employment in retaliation for their having raised concerns regarding DeKalb County's compliance with the federal Clean Water Act, 33 U.S.C. §1367.

33.

At the time that Defendant Gudewicz recommended terminating the Plaintiffs' employment he know and/or should have known that the federal Clean Water Act makes it unlawful for an employer discharge an employee in retaliation for him or her having raised concerns under that Act.

34.

As a result of the foregoing, Defendant Gudewicz deprived Plaintiffs of a federally protected right, in violation of 42 U.S.C. §1983.

35.

On information and belief, Defendant Walker approved Defendant Gudewicz's recommendation to terminate the Plaintiffs' employment in retaliation for their having raised concerns regarding DeKalb County's compliance with the federal Clean Water Act, 33 U.S.C. §1367.

36.

At the time that Defendant Walker approved Defendant Gudewicz's recommendation to terminate the Plaintiffs' employment he know and/or should have known that the federal Clean Water Act makes it unlawful for an employer discharge an employee in retaliation for him or her having raised concerns under that Act.

37.

As a result of the foregoing, Defendant Walker deprived Plaintiffs of a federally protected right, in violation of 42 U.S.C. §1983.

38.

On information and belief, Defendant Gudewicz recommended terminating the Plaintiffs' employment in retaliation for Plaintiffs having exercised their rights under the First Amendment to the United States Constitution to raise concerns regarding the

reporting of SSO's in DeKalb County.

39.

On information and belief, Defendant Walker approved Defendant Gudewicz's recommendation to terminate the Plaintiffs' employment in retaliation for Plaintiffs having exercised their rights under the First Amendment to the United States Constitution to raise concerns regarding the reporting of SSO's in DeKalb County.

40.

Defendants retaliated against Plaintiffs for expressing their concerns regarding the reporting of SSO's, in violation of the First Amendment to the United States Constitution.

41.

As a result of the foregoing, Defendants deprived Plaintiffs of a federally protected right, in violation of 42 U.S.C. §1983.

42.

As a result of the aforesaid recommendation and approval, Plaintiffs Abdur-Rahman and Petty were discharged by DeKalb County on March 11, 2005.

43.

As a result of the foregoing, Plaintiffs suffered and continue to suffer economic damages, including but not limited to back pay.

44.

As a result of the foregoing, Plaintiffs suffered and continue to suffer mental anguish and emotional harm.

WHEREFORE, Plaintiffs seek the following relief:

1. Compensatory make-whole relief for Plaintiffs' economic damages;

2. Damages for mental anguish;

3. Punitive damages;

4. Attorneys' fees, expert witness fees, costs and disbursements of this action;

5. Interest from March 11, 2005, until judgment is entered and post-judgment interest as may be proper;

6. Such other and further relief as this Court deems appropriate; and

7. Plaintiffs demand TRIAL BY JURY.

This 9th day of January 2007.

MARX & MARX, L.L.C.

By: _____
     Robert N. Marx
     Georgia State Bar No. 475280
     400 Perimeter Center Terrace, N.E.
     Suite 900
     Atlanta, Georgia 30346
     (404) 261-9559
     lawyers@marxlaw.com
     Attorneys for Plaintiffs