## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DAISY ABDUR-RAHMAN and RYAN PETTY,** | |
| **Plaintiffs,** | |
| **v.** | **1:07-cv-00048-WSD** |
| **JOHN WALKER and CHESTER GUDEWICZ, JR.,** | |
| **Defendants.** | |

## OPINION AND ORDER

Plaintiffs Daisy Abdur-Rahman and Ryan Petty ("Plaintiffs") are former Compliance Inspectors with the DeKalb County, Georgia Department of Public Works, Water & Sewer Department.  Plaintiffs allege they were retaliated against by their former supervisors, defendants John Walker[1] and Chester Gudewicz, Jr. ("Defendants"), for their inquiries and comments regarding DeKalb County's compliance with the federal statute commonly known as the Clean Water Act ("CWA").  33 U.S.C. §§ 1251-1387.  Plaintiffs' claims arise pursuant to 42 U.S.C. § 1983 ("Section 1983") and assert violations of the whistleblower provision of the

---

[1] On March 25, 2008, Defendants filed a Suggestion of Death advising the Court that Defendant Walker died on October 20, 2007 [38].

CWA, 33 U.S.C. § 1367, and Plaintiffs' free speech rights guaranteed by the First Amendment.  U.S. Const. amend. I.  The matter is before the Court on the Defendants' Renewed Motion for Judgment on the Pleadings [32].

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Abdur-Rahman and Petty began their employment as Compliance Inspectors with the DeKalb County Department of Public Works, Water & Sewer Department in August and September 2004, respectively.  Am. Compl. ¶¶ 10-11. At all times relevant to this case, Gudewicz was Plaintiffs' immediate supervisor, and Walker was Gudewicz's immediate supervisor.  Id. ¶¶ 12-13.

When they were hired, Plaintiffs were told their job duties included writing DeKalb County's fat, oil, and grease ("FOG") ordinances.  Id. ¶ 15.  Plaintiffs allege that, "[a]lthough their job duties with respect to revising DeKalb County's FOG codes did not require them to evaluate SSO data, Plaintiffs undertook to research the existing sanitary sewer overflow ('SSO') problem in DeKalb County so as to ascertain 'SSO hotspots' in DeKalb County in order to write a better and more effective FOG code.  To this end, Plaintiffs requested historical data about SSOs in DeKalb County, SSO reporting documents used in DeKalb County, and any reports or reporting documents for SSOs that had occurred in DeKalb County."

Id. ¶ 16.  Plaintiffs also allege that Defendants Gudewicz and Walker testified at an administrative hearing that Plaintiffs' job duties did not "require" them to obtain or include information regarding SSOs.  Id. ¶¶ 18-19.

Plaintiffs allege they were "stonewalled" from the outset by "management in their efforts to obtain the necessary SSO data that would support any changes they might make regarding the FOG codes."  Id. ¶ 20.  Defendants Walker and Gudewicz allegedly responded that Plaintiffs were being "too scientific" and "too thorough" in their attempt to obtain SSO data.  Id. ¶ 21.  Thereafter, Plaintiffs, along with other Compliance Inspectors, commenced their own field inspections of SSOs.  Id. ¶ 22.  Plaintiffs began to raise their concerns about protocols and standards for SSOs in DeKalb County, including DeKalb County's obligations to report SSO's to the Georgia Environmental Protection Division ("EPD").  Id. Plaintiffs allege that Walker and Gudewicz responded in November 2004 and stated that Plaintiffs were "ruffling too many feathers."  Id. ¶ 23.

At the beginning of 2005, Plaintiffs job duties were expanded "to include investigating SSO's in order to determine whether grease was the cause of the SSO's."  Am. Compl. ¶ 24.  Plaintiffs assert, and Defendants admit, that although they were empowered to "investigate SSO's," it was not part of their job duties to

determine, remediate, post, or report any SSOs to the Georgia EPD.  Id. ¶ 25; Answer to Am. Compl. ¶ 25.[2]

Plaintiffs allege that during their employment, they articulated concerns to management that SSOs were not being properly reported to the EPD, were not being properly tested and posted, and were not properly cordoned off from the public or bioremediated to guard against health hazards.  Id. ¶ 26.  Plaintiff Abdur-Rahman allegedly investigated and communicated her concerns to the Defendants regarding two specific SSOs: (1) the Panthersville Road SSO first investigated on January 27, 2005, and (2) the Fairlake Drive SSO first discussed by Plaintiff Abdur-Rahman in February 2005.  Id. ¶¶ 38-39.  Plaintiff Petty also allegedly raised the issue of neglect to report fish kills at the Panthersville SSO.  Id. ¶ 38. Plaintiffs allege that they continued to be stonewalled by the Defendants in their efforts to investigate and obtain reporting information on SSOs.[3]

---

[2]  The Court accepts as true Plaintiffs' allegation that "when an SSO occurred in DeKalb County and reached a state waterway, the County was required to report that SSO within 24 hours to the Georgia EPD, including providing such information as the location of the SSO, the number of gallons involved in the spill, whether there was a fish kill, whether the site was posted, and the affected state waterway."  Am. Compl. ¶ 24.

[3]  The Court accepts as true Plaintiffs' allegation that, "On November 20, 2006 DeKalb County and the Georgia EPD entered into a Consent Order, No.

On January 26, 2005, Plaintiffs allege Gudewicz recommended that the Plaintiffs be discharged for unsatisfactory work performance.  Id. ¶ 44.  Plaintiffs assert that they performed their jobs in a satisfactory manner and were never informed of any alleged deficiencies in their performance.  Id. ¶ 43.  On February 8, 2005, Walker approved Gudewicz's recommendation to terminate Plaintiffs' employment.  Id. ¶ 47.

On March 11, 2005, Plaintiffs were discharged by DeKalb County.  Id. ¶ 58.

On April 11, 2005, Plaintiffs filed whistleblower complaints with the United States Department of Labor against DeKalb County, and Defendants Walker and Gudewicz, among others, pursuant to the whistleblower provision of the CWA.  33 U.S.C. § 1367; 29 C.F.R. 18, 24.  The CWA's whistleblower provision protects employees from discrimination for attempting to carry out the purposes of the CWA.  33 U.S.C. § 1367(a).  On September 22, 2006, Administrative Law Judge Richard A. Morgan dismissed all defendants but DeKalb County from the action.  See In the Matter of Abdur-Rahman & Petty v. DeKalb County, Case Nos. 2006-

EPD-WQ-4628 regarding spills that had occurred in DeKalb County through March 2006 . . . . The Consent Order directed DeKalb County to pay a fine of $265,875.00." Id. ¶ 42.

WPC-2, 2006-WPC-3, September 10, 2007 Decision and Order [28] at 2-3 (the "ALJ Order").

On January 9, 2007, Plaintiffs filed this action against Walker and Gudewicz.  Plaintiffs filed their action pursuant to Section 1983 and allege deprivations of their federally protected rights under the whistleblower provision of the CWA, 33 U.S.C. § 1367, and the First Amendment, U.S. Const. amend. I. Plaintiffs seek damages and permanent injunctive relief.

The Defendants answered the Complaint on February 14, 2007 and filed for judgment on the pleadings on April 13, 2007.

On May 23, 2007, the Court stayed this action pending the outcome of the Plaintiffs' administrative action against DeKalb County.

On June 1, 2007, Plaintiffs moved to amend their complaint.

On September 10, 2007, Administrative Law Judge Morgan issued a decision and order denying Plaintiffs relief under the whistleblower provision of the CWA [28].  Judge Morgan concluded that although the Plaintiffs had engaged in activities protected under the CWA, they had not proven by a preponderance of the evidence that they were terminated because of engaging in protected activity. ALJ Order at 32.

On October 11, 2007, the Court granted Plaintiffs' requested amendment to the Complaint and continued to stay discovery in this action pending appeal of Judge Morgan's decision to the Administrative Review Board of the Department of Labor.

The Defendants filed a renewed motion for judgment on the pleadings on November 7, 2007 [32].

## II.   DISCUSSION

### A.   <u>The Standard on a Motion for Judgment on the Pleadings</u>

"A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss." <u>Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta</u>, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).  The law governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and considers the allegations in the complaint in the light most

favorable to the plaintiff.  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Co. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  A formal recitation of the elements of a cause of action is not sufficient without adequate factual allegations stating a plausible claim for relief. Watts, 495 F.3d at 1295.

**B.   Plaintiffs' Claim Under the Clean Water Act**

Plaintiffs' first claim alleges that Walker and Gudewicz violated the whistleblower provisions of the CWA by terminating the Plaintiffs in response to their inquiries regarding SSO data and reporting.  Plaintiffs allege their cause of action pursuant to Section 1983.  Am. Compl. ¶¶ 48-53.

Section 1983 provides an avenue for citizens to seek redress for violations of the United States Constitution and the laws of the United States.  42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  Section 1983 generally authorizes actions to enforce rights guaranteed by federal law, and the Supreme Court has held that

Section 1983 authorizes private suits to redress violations by state officials of rights created in federal statutes.  Maine v. Thiboutot, 448 U.S. 1 (1980).  Plaintiffs here claim DeKalb County officials Walker and Gudewicz violated their whistleblower rights under the CWA, thus allowing their claims to be brought under Section 1983.

The Supreme Court has recognized two important exceptions to Section 1983's general authorization of actions for violations of federal statutes.  Section 1983 does not authorize private suits when: (1) Congress has foreclosed private enforcement of the statute in the enactment itself; and (2) when the statute itself does not create rights, privileges, or immunities within the meaning of Section 1983.  Middlesex County Sewerage Authority v. National Sea Clammers Assoc., 453 U.S. 1, 19 (1981).  "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Id. at 20.

In Sea Clammers, the Supreme Court explicitly held that the existence of express remedies in the CWA demonstrates that Congress intended to foreclose suits that would otherwise be available through Section 1983.  Id. at 21. Accordingly, Section 1983 does not provide an avenue for a plaintiff to seek

-9-

remedies for violations of the CWA.  Id.  The Court noted in its discussion that the CWA itself provides comprehensive enforcement mechanisms, including the whistleblower section authorizing an administrative action with the Department of Labor, 33 U.S.C. § 1367, and a citizen-suit provision, 33 U.S.C. § 1365.[4]  See also Purvis v. Douglasville Dev., LLC, No. 1:06-cv-0415-WSD, 2006 WL 3709610, at *3 (N.D. Ga. Nov. 9, 2006) (discussing notice requirements under the citizen-suit provision of the CWA).  Under the reasoning in Sea Clammers, Plaintiffs lack the authorization to assert a Section 1983 claim to enforce the whistleblower provision of the CWA.

Plaintiffs argue that the Sixth Circuit's decision in Charvat v. E. Ohio Reg'l Wastewater Auth., 246 F.3d 607 (6th Cir. 2001), should apply to permit a Section 1983 suit for violations of the CWA.  Even if a decision of the Sixth Circuit had binding effect on this Court, Plaintiffs misinterpret the Sixth Circuit's holding in Charvat.  In circumstances similar to this case, the plaintiff in Charvat was the

---

[4]  Plaintiffs do not assert any claims under the citizen-suit provision of the CWA.  Further, although the whistleblower provision authorizes judicial review of administrative actions conducted before the Department of Labor in certain circumstances, 33 U.S.C. § 1367(b), the Plaintiffs have not sought judicial review of Administrative Law Judge Morgan's decision and order, which remains on appeal before the Administrative Review Board of the Department of Labor.

former superintendent of the Eastern Ohio Wastewater Authority and claimed he was terminated from that position, in part, as retaliation for his investigation concerning his employer's reporting obligations of water quality violations to the Ohio Environmental Protection Agency.  Id. at 609.  The plaintiff in Charvat filed suit under Section 1983, alleging that the termination violated his free speech rights under the First Amendment.  Id.  The Sixth Circuit considered the question of whether the whistleblower provision of the CWA, 33 U.S.C. § 1367, precluded a separate action under Section 1983 for free speech violations.  Id.

The Sixth Circuit discussed the administrative procedures available under the CWA's whistleblower provision.  Id. at 613.  The Sixth Circuit also discussed Sea Clammers and the Supreme Court's subsequent decision in Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106 (1989), stating that the express remedies provided in the CWA demonstrate that Congress intended to foreclose private suits under Section 1983 to enforce the CWA.  The Sixth Circuit held, however, that Sea Clammers and Golden State do not preclude a Section 1983 action claiming First Amendment violations.  Charvat, 246 F.3d at 614.

Plaintiffs are in a similar situation in this case.  They have filed Section 1983 claims to remedy violations of both the CWA and the First Amendment.  Sea

-11-

Clammers clearly states that Section 1983 cannot be used to pursue remedies for

violations of the CWA.  Charvat reiterates that holding, stating only that the

CWA's administrative remedies through 33 U.S.C. § 1367 do not foreclose a First

Amendment suit brought under Section 1983.  Pursuant to the Supreme Court's

holdings in Sea Clammers and Golden State, Plaintiffs are, however, precluded

from bringing their private claims under Section 1983 for violations of the

whistleblower provisions of the CWA, and the Defendants' motion for judgment

on the pleadings is granted on Plaintiffs' CWA claims.[5]  The Court next considers

Plaintiff's First Amendment retaliation claims.

C.    **Plaintiffs' First Amendment Claims**

The law is well-established that the State may not demote or discharge a

public employee in retaliation for speech protected under the First Amendment.

Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989).  This First

Amendment right, however, is not absolute.  Id.  In cases where the State denies

---

[5]  Plaintiffs also urge the Court to find an implied private right of action in
the CWA, pointing to the general statements about private rights of action in
AT&T Wireless PCS, Inc. v. City of Atlanta, 210 F.3d 1322, 1328 (11th Cir.
2000), opinion vacated on reh'g en banc, 260 F.3d 1320 (11th Cir. 2001).
Plaintiffs have not identified any Eleventh Circuit (or any other Circuit) decision
finding an implied private right of action in the CWA, and in any event, the
Eleventh Circuit vacated its opinion in AT&T.

discharging an employee because of speech, the Court engages in a four-stage

analysis first set out in Pickering v. Board of Educ., 391 U.S. 563 (1968).  To state

a *prima facie* case of First Amendment retaliation, a plaintiff must show that (1)

the plaintiff spoke "as a citizen" on speech that can fairly be categorized as a

matter of public concern, D'Angelo v. School Bd. of Polk County, Fla., 497 F.3d

1203, 1209 (11th Cir 2007); and (2) the plaintiff's First Amendment interests as a

citizen outweigh the interests of the State as an employer in promoting efficient

public services.  Bryson, 888 F.2d at 1565; Pickering, 391 U.S. at 568.  The first

two questions are questions of law for the Court.  Cook v. Gwinnett County School

Dist., 414 F.3d 1313, 1318 (11th Cir. 2005).  If the employee prevails on the

balancing test, the fact-finder then determines if (3) the employee's speech played

a substantial motivating role in the government's decision to demote or discharge

the employee.  Bryson, 888 F.2d at 1565-66; Mt. Healthy City School Dist. Board

of Educ. v. Doyle, 429 U.S. 274 (1977).  "If any employee satisfies her burden on

the first three steps, the burden then shifts to the employer to show by a

preponderance of the evidence that [4] it would have made the same decision even

in the absence of the protected speech."  Cook, 414 F.3d at 1318; accord Mt.

Healthy, 429 U.S. at 286.  "[T]he final two steps are 'questions of fact designed to

determine whether the alleged employment action was in retaliation for the protected speech.'"  Cook, 414 F.3d at 1318 (quoting Anderson v. Burke County, Ga., 239 F.3d 1216, 1219-20 (11th Cir. 2001)).

The threshold question in First Amendment retaliation cases is whether the employee spoke both on a matter of public concern and as a citizen.  The Supreme Court established these dual requirements in its 2006 decision in Garcetti v. Ceballos, 547 U.S. 410 (2006).  In that case, the respondent-plaintiff was employed as a calendar deputy district attorney for the Los Angeles County District Attorney's Office.  Based on contact with a defense attorney and his own independent investigation, the plaintiff filed two memos with his supervisors detailing what he perceived to be material inaccuracies in an affidavit used to obtain a crucial search warrant in a case.  The plaintiff filed a Section 1983 First Amendment action after he received what he perceived to be retaliatory treatment in response to his memos.  Id. at 414-15.

In upholding the district court's grant of summary judgment in favor of the defendants, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications

-14-

from employer discipline." Id. at 421.  The Supreme Court noted that the plaintiff wrote his memos "because that is part of what he, as a calendar deputy, was employed to do." Id.  The Court did not, however, articulate a formal framework for defining the scope of an employee's duties in First Amendment cases.  "The proper inquiry is a practical one.  Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 424-25. The Eleventh Circuit has since applied Garcetti's "speech as a citizen" requirement in its decisions.  D'Angelo, 497 F.3d at 1209; Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007); Phillips v. City of Dawsonville, 499 F.3d 1239, 1241 (11th Cir. 2007).  The Eleventh Circuit has also affirmatively cited the Supreme Court's statements in Garcetti that the inquiry of what falls into an employee's official duties is pragmatic and is not disposed of solely through analysis of an employee's formal job duties.  D'Angelo, 497 F.3d at 1211; Phillips, 499 F.3d at 1242; Khan v. Fernandez-Rundle, No. 06-15259, 2007 WL 2859803, at *3 (11th Cir. Oct. 3, 2007).

The Court must therefore assess whether the Plaintiffs in this case conducted their alleged speech activities "pursuant to their official duties."  The Court is required to limit its consideration to the Plaintiffs' allegations in their Amended Complaint and to admissions by the Defendants.  Plaintiffs allege that they were hired to write FOG codes for DeKalb County, and that initially their job responsibilities "did not require them to evaluate SSO data."  Am. Compl. ¶ 16; accord id. ¶¶ 18, 19.  Defendants admit those allegations.  Answer to Am. Compl. ¶¶ 16, 18, 19.  Plaintiffs also allege, however, that they researched SSO data "so as to ascertain 'SSO hotspots' in DeKalb County in order to write a better and more effective FOG code."  Am. Compl. ¶ 16.   Plaintiffs also allege that beginning in 2005, their "job duties were expanded to include investigating SSO's in order to determine whether grease was the cause of the SSO's."  Am. Compl. ¶ 24.  The Defendants admit this allegation as well.  Answer to Am. Compl. ¶ 24.  Plaintiffs allege they investigated two specific SSOs – at Panthersville Road and at Fairlake Drive – in January and February 2005.  Am. Compl. ¶¶ 38, 39.  Finally, Plaintiffs allege that it was not part of their job duties to determine, remediate, post or report any SSOs in DeKalb County, nor was it their responsibility to monitor DeKalb

County's compliance with applicable federal or state laws regarding SSOs.  Am. Compl. ¶ 25.

As the Supreme Court has expressed, and the Eleventh Circuit has favorably cited, the determination of "official duties" is a pragmatic question not determined by recitation of an employee's enumerated duties.  "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created." Garcetti, 547 U.S. at 421-22.  By this standard, the Plaintiffs' speech in this case "owed its existence" to their professional responsibilities as Compliance Inspectors with DeKalb County.  As Plaintiffs allege, they investigated SSOs initially in order to write better FOG code – or put different, in order to better perform the job they were hired to do.  Am. Compl. ¶ 16.  In early 2005, Plaintiffs allege that their official job duties were in fact "expanded to include investigating SSO's." Id. ¶ 24.  Indeed, the only two specific SSOs Plaintiffs allege to have investigated were investigated after their official job duties were expanded to include investigating SSOs.

Plaintiffs contend that because their official job duties did not include determining, remediating, posting, or reporting SSOs, their speech activities are constitutionally protected.  This argument is unpersuasive.  First, Plaintiffs do not allege that they determined, remediated, posted, or reported SSOs, either formally or informally.  Plaintiffs instead allege that they requested SSO data from their superiors and conducted independent investigations in order to better perform their enumerated jobs.  Second, the Supreme Court has made clear that specific job functions are not dispositive.  What matters instead is a pragmatic inquiry into the full scope of the Plaintiffs' duties.  In this case, Plaintiffs repeatedly allege that SSO data was, or could be, used to improve their performance in writing FOG codes.  Even assuming the Plaintiffs also became concerned about DeKalb County's reporting obligations under federal law for SSOs, and communicated those concerns to their superiors, this does not change the fact that they learned of SSOs because of and while performing their official job responsibilities.  The Court determines that the Plaintiffs conducted their speech activities largely to fulfill their professional responsibilities.  Under Garcetti, Plaintiffs did not speak as

"citizens" on a matter of public concern, and the Defendants' motion for judgment on the pleadings must be granted.[6]

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendants' Renewed Motion for Judgment on the Pleadings [32] is **GRANTED**.

**SO ORDERED** this 31st day of March 2008.



_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[6]   The Defendants also argue that they are entitled to qualified immunity from suit in this case because the right the Plaintiffs seek to vindicate was not "clearly established" at the time of their termination.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001); Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1208-09 (11th Cir. 2007).  Because the Court has already determined that Plaintiffs fail to state a *prima facie* case of First Amendment retaliation, the Court need not, and does not, consider whether the Defendants should also be immune from suit.